(53 App. Div. 576.)

## In re LOPER et al.

(Supreme Court, Appellate Division, Fourth Department. July 24, 1900.)

INTOXICATING LIQUORS — CERTIFICATE — REVOCATION — ACTION OF TENANT — RIGHTS OF LANDLORD.

> Laws 1896, c. 112, § 17, subd. 8, requires the written consent of two-thirds of the occupants of dwelling houses within 200 feet of a building before it can be used as a saloon, unless it was occupied for that purpose prior to March 23, 1896. Defendants purchased a building in January, 1900, which had been used as a saloon continuously since and prior to March 23, 1896, and they agreed that the tenant, who held a liquor tax certificate which expired May 1, 1900, might continue to occupy the building as a saloon until March 1, 1900, but the tenant, on January 29th, without notice to defendants, surrendered her certificate, and received a rebate thereon, though, when defendants obtained possession, there was nothing to indicate that the building had not been used continuously as a saloon. *Held*, that it was error to revoke defendant's liquor tax certificate for using the building as a saloon after March 1, 1900, without first obtaining the consent of two-thirds of the occupants of dwellings within 200 feet thereof, since they were not responsible for the action of the tenant in discontinuing the use of the building for saloon purposes.
>
> Spring and Williams, JJ., dissenting.

Appeal from special term, Niagara county.

Petition by Louis N. Loper and another to revoke a liquor tax certificate issued to Daniel Slattery and James J. Hammond. From an order revoking the certificate, Daniel Slattery and James J. Hammond appeal. Reversed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and LAUGHLIN, JJ.

Richard Crowley, for appellants.
G. D. Judson, for respondents.

McLENNAN, J. The facts in this case are not in dispute, and are of such a character as to present the interesting question whether privileges which attach to real property by virtue of a statute may be destroyed or materially impaired, without the knowledge or consent of the owner, by the secret act of a tenant, done in violation of his agreement of lease. The premises in question, situate in Gasport, in the town of Royalton, Niagara county, N. Y., were owned by one Charles Hathaway prior to March 23, 1896, when the liquor tax law, so called, went into effect, and until the 17th day of January, 1900, at which time they were purchased by the appellants. At the time the

liquor tax law went into effect, and continuously thereafter until the 29th day of January, 1900, the premises had been occupied as a saloon, and for the purpose of trafficking in liquors, by one Mary A. Knights, under a verbal lease with Hathaway, she paying rent monthly in advance. On April 29, 1899, Mary A. Knights obtained a certificate from the county treasurer, authorizing her to continue the traffic in liquors until May 1, 1900. The premises were purchased by the appellants for the purpose of carrying on traffic in liquors thereon, and are very much more valuable for that purpose than for any other, and unless they can be occupied for such purpose are of comparatively little value to the purchasers. Within a day or two after purchasing the premises, the appellants informed Mary A. Knights, who was then in possession of said premises, and engaged in carrying on the business of trafficking in liquors thereon, of their purchase, and notified her that they desired immediate possession of the premises for the purpose of continuing such business, to which they were entitled under their deed of conveyance. Mrs. Knights asked the appellants to permit her to continue in possession of said premises until the 1st day of May, 1900,—the time when her liquor tax certificate would expire,—to enable her to get another place. This the appellants refused to do, but for the purpose of accommodating her they consented that she might occupy the premises until March 1, 1900, for the purposes of a saloon, and for carrying on the traffic in liquors, as she was then doing, which she agreed to do, and to pay for the use of said premises the sum of $25 per month up to March 1, 1900, and then to surrender possession of the same. At the same time it was verbally agreed and understood between said Mary A. Knights and the appellants that, if she had any liquors or supplies on hand March 1, 1900, they would take them from her at a price to be agreed upon. On the 29th day of January, 1900,—10 or 12 days after this arrangement was made,—Mrs. Knights, without any notice to the appellants, or any knowledge, either directly or indirectly, on their part, of her intention so to do, surrendered her liquor tax certificate to the county treasurer of Niagara county, and received the rebate thereon. On February 1, 1900,—two days after such surrender,—one of the appellants went to the saloon to collect the rent due, which was paid, and Mrs. Knights did not inform him that she had surrendered her certificate, and there was no change in the premises or their occupancy which would in any manner indicate that traffic in liquors upon the premises had been discontinued. At that time all the saloon fixtures and furniture were in place; the sign "Henry A. Knights"—that being the name under which said business had been carried on—was over the door; on the side of the building were the words "Hathaway & Golden's Porter and Ale"; and on that occasion, February 1, 1900, Mrs. Knights said to one of the appellants that if anything should happen by which they would not carry on the saloon business in the building, or if they should be unable to obtain a license therefor, she would like to rent the premises, and continue the business. On the 17th day of February, 1900, the appellants made application to the county treasurer for a liquor tax certificate authorizing them to carry

on the business of trafficking in liquors at the place in question, and obtained a certificate therefor, to take effect on the 1st day of March, 1900, and to run until May 1, 1900. On the 1st day of March, 1900, Mrs. Knights vacated the premises, and the appellants went into possession, and commenced trafficking in liquors under such certificate. They found in the premises bar fixtures, tumblers, glasses, bottles, extracts for making mixed drinks, a small quantity of ale, and some saloon furniture. There was nothing to indicate that the traffic in liquors had been discontinued by Mrs. Knights previous to her removal. The certificate so obtained by the appellants is sought to be revoked by this proceeding, for the reason and upon the sole ground that Mary A. Knights had discontinued the traffic in liquors at the place in question on the 29th day of January, 1900, and that, therefore, the appellants were not entitled to receive the certificate in question, they not having obtained the consent in writing that traffic in liquors should be carried on in the premises, executed by the owner or owners of at least two-thirds of the buildings exclusively occupied for dwellings situated within 200 feet of said premises. Upon these facts and under those circumstances the certificate issued to the appellants was revoked, and from the order revoking the same this appeal is taken.

If the order appealed from is to stand, it follows that a tenant may at will seriously impair the rights of his landlord in leased premises, and that the landlord is powerless to protect himself against loss or injury thereby. The privilege which attached to the property in question to sell liquor without the consent of those living within 200 feet of the premises was a valuable one, and, as appears by the evidence in this case, constituted the chief value of the premises. Under the arrangement made by the appellants with Mrs. Knights, she obligated herself to preserve such privilege; obligated herself to continue the business of trafficking in liquors until she surrendered possession to the appellants, March 1, 1900, when, under the license obtained by them, they would be entitled to continue the same business. Without the knowledge or consent of the appellants (whether upon her own motion or acting in collusion with the petitioners does not clearly appear), Mrs. Knights, by her secret act, in effect sought to destroy the valuable privilege which attached to the leased premises, to wit, the right to traffic in liquors upon the premises in question, without obtaining the consent of the adjacent owners. We think such a construction of the statute is unreasonable, and ought not to prevail. It is not contended or suggested that the agreement made by the appellants with Mrs. Knights was not made in good faith, and apparently it was made for the very purpose of preserving their right to continue the business of trafficking in liquors upon the premises in question. The arrangement was a reasonable one. Upon their purchase they had a right to enter into immediate possession; were entitled to a liquor tax certificate as matter of right, but for the purpose of accommodating the then tenant they permitted her to remain in possession, upon the express agreement that she would continue the traffic in liquors until the 1st day of March, 1900, at which time the appellants were to enter into possession and themselves continue such traffic. As we have seen,

secretly, without any knowledge on the part of the appellants, and without any opportunity to obtain such knowledge, in violation of her agreement, Mrs. Knights in fact discontinued her business, although to all outward appearances it was continued, and by such means it is sought to substantially destroy the value of the premises purchased by the appellants. So far as we have been able to discover, the precise question here involved has not been passed upon by the courts of this state. The cases cited upon the respondent's brief we think do not apply. In those cases a tenant of premises, who was engaged in trafficking in liquors, discontinued such business, and afterwards vacated the premises, and a subsequent lessee sought to engage in the business of trafficking in liquors on such premises under a certificate issued to him. In all these cases it was held that the discontinuance of the traffic by the first tenant was conclusive upon the subsequent tenant, and that the certificate was properly revoked. In those cases there was no agreement between the owner and the first tenant that such tenant would carry on the liquor business in the leased premises; and, in any event, such agreement would not be available to the subsequent tenant. It is undoubted that, if the owner of real property occupied as a saloon leases it without restriction as to its use, the lessee may discontinue its use as a saloon, and use it for any other legitimate purpose, and thereby devest the property of the privilege which would have attached to it under the statute if its use as a saloon had not been discontinued. Suppose, on the other hand, that the owner of premises valuable only for use as a saloon leases them for a term of years, upon the express agreement on the part of the tenant that he will carry on the business of trafficking in liquors therein continuously during the term of the lease. Could such tenant, a day or two days before the expiration of such term, secretly and without the knowledge or consent of the landlord, surrender his liquor tax certificate, discontinue the business, and thereby deprive the property of the valuable privilege which otherwise would attach to it under the statute? If so, then the owner of such property is absolutely without the means of protecting himself against the act, malicious or otherwise, of the tenant. If the lease in the case supposed provided for re-entry in case the tenant discontinued the traffic in liquors, it would afford no protection, because, as in the case at bar, the discontinuance might be done secretly, and in such way that the owner could have no means of knowing the fact. The provision of the statute under consideration was construed in Re Kessler, 163 N. Y. 205, 57 N. E. 402, and it was considered that it should be interpreted in a reasonable manner, rather than literally. In that case the certificate was sought to be revoked on the ground that the applicant had made a false statement in his application. The alleged false statement was to the effect that the premises had been continuously occupied for traffic in liquors. It appeared that at the time the statement was made the business of trafficking in liquors had been discontinued for three months, because of the fact that a portion of the premises had been destroyed by fire. At the time of the application the premises were being rebuilt or repaired with all reasonable speed, and with the bona fide intention of the applicant to resume business as soon as the work was completed.

It was held that a revocation of the certificate in that case was error.
Judge O'Brien, in writing the opinion of the court, says:

"The false statements in an application for a certificate which will justify
its revocation under the statute must relate to some material matter of fact,
and it must be shown that such fact was willfully misstated by the applicant.
If the statement relates to some matter of law as to which the applicant is
ignorant or misinformed, that will not be sufficient to warrant the court in
canceling a certificate. * * * It appears from the record that the prem-
ises in question were actually used for the liquor traffic on the day mentioned
[March 23, 1896], and continuously thereafter until the 22d day of April, 1898,
the then occupant procured a new license, which expired on May 1, 1899. This
license was transferred to Cashin on the 20th day of April, 1899. It appears
that at this date the business was temporarily suspended, for the reason that
the building, or a portion of it, had been destroyed by fire on the 19th day of
February previous, and it was not repaired or rebuilt so as to permit the
conduct of the business therein until the 19th of May following. Unless this
temporary suspension of the business was sufficient to deprive the place of
the right to a license reserved in the general law to places where the traffic was
being conducted at the date of its passage, the statements of the petition were
not false within any fair construction of the statute. The suspension was due
entirely to the fact that the place had been wholly or partially destroyed, since
there was no intention to abandon the business, but, on the contrary, to resume
it as soon as the building was in a proper condition for that purpose, and it
was actually resumed by Cashin under the certificate in question as soon as the
place was put in a suitable condition for the business. The provision of the
statute which secures the right to a license for a place where the business is
conducted at the time of the passage of the law does not require that the
traffic should be continuous under any and all circumstances. The plain pur-
pose of the law was that, when the business in such places had been once aban-
doned, it should not be resumed except with the consent of the residents, as
pointed out in the statute. A temporary suspension of the traffic, resulting
from an accident such as the destruction of the building by fire, or the like,
will not operate to affect the right attached to the premises under the law."

It seems to us that it would be even more unjust and inequitable to
hold that the certificate of the appellants should be revoked because of
the statement contained in their application than in the case decided
by the court of appeals. In that case the traffic in liquors was sus-
pended for several months by the destruction of the building by fire,
and through no fault of the applicant. In the case at bar the legal
traffic in liquors was suspended only for a few days, through no fault
of the owners, without their knowledge or consent, and under such
circumstances that they were powerless to prevent the same, and it
is quite apparent that the actual traffic was continued until the re-
moval of Mrs. Knights from the premises. The appellants, for the
purpose of accommodating the tenant, and under the express agree-
ment on her part that she would continue the traffic in liquors until
she surrendered possession to them, consented to permit her to
occupy the premises for a few days. During those few days, by her
conduct, of which the appellants had no knowledge, she has made it
impossible, if the order appealed from is to stand, for the appellants
to occupy the premises for the purpose for which they were purchased,
and for the only purpose to which they are adapted. We are of the
opinion that a fair, reasonable, and just interpretation of the statute
requires that the order appealed from should be reversed.

Order reversed, with costs.

ADAMS, P. J., concurs.

LAUGHLIN, J. (concurring).   It appears uncontroverted that Slattery and Hammond purchased the premises for the purpose of personally conducting a saloon thereon; that they could not obtain immediate possession, as Mrs. Knights, the monthly tenant of the grantor, was in possession, having paid the rent for the month of January, and desired to remain; that they arranged with her to vacate on the 1st of March, which was the earliest date on which they could have obtained possession against her will; that it was expressly understood that she would continue the business, and she led them to believe that she would not surrender her liquor tax certificate until that date; that they agreed to and did subsequently purchase all bar fixtures, saloon furniture, and liquors which she had on hand; that the saloon signs and government cigar and liquor license remained up, and the liquors, fixtures, and furniture remained as they were in use by her before suspending, and she continued to occupy the premises until March 1st precisely as before, excepting that no liquor was sold thereon after the surrender of her certificate; that the premises were not during said time used for any other purpose.   The liquor tax certificate could not be canceled under the law until a month after its surrender. Ten days before the lapse of that period the new liquor tax certificate was issued to Slattery and Hammond, who applied for the same with due diligence; and the agent of the state, the county treasurer, who issued it, was fully aware of all the facts.   The statute provides that no consents of the owners of neighboring property shall be required where premises were used for trafficking in liquor on March 23, 1896, and that, where consents unlimited as to time have once been obtained, no further consents shall be required "so long as such premises shall be continuously occupied for such traffic."   Where, as here, the premises were used for trafficking in liquor on the 23d day of March, 1896, continuous trafficking thereafter is not required by the express language of the statute to relieve the owner from obtaining consents, but only by judicial construction.   It is significant, and should be borne in mind in construing this enactment, that the criterion is not whether liquor has been continuously sold on the premises, but whether that is the use to which the premises have been continuously devoted.   The owners of residential property within 200 feet of premises have no constitutional right to be permitted to determine whether such premises shall be licensed to sell liquor; nor, on the other hand, has the holder of a liquor tax certificate any constitutional right to continue trafficking in liquor.   By a higher license fee, and requiring the consents of two-thirds of such owners of neighboring property, it was designed to reduce the number of licensed places.   The legislature, however, by expressly dispensing with such consents as to premises then licensed, and as to premises thereafter licensed where consents unlimited as to time were once obtained and filed, quite clearly manifested an intention to protect property owners as to investments and expenditures made in good faith in constructing and fitting up premises for saloon purposes.

It would be difficult, if not impossible, to enunciate a principle in the construction of this statute that would apply to all cases.   I think it may be safely stated as a general rule, however, to which there may

be exceptions, that this vested privilege and right, annexed by statute to premises used for trafficking in liquor on the 23d day of March, 1896, should and may be continued within the true intent and spirit of the law until the owner forfeits the right by devoting or consenting or acquiescing in the devotion of the premises to another use, or by some act manifests an intention to suspend or abandon their use for the purpose of trafficking in liquor.

I cannot agree with the holding by implication contained in Justice McLENNAN'S opinion that the tenant, by surrendering the certificate, may deprive the landlord of this right, unless there was an express agreement that trafficking in liquor should not be suspended. I think renting premises for such traffic is sufficient to preserve the right, provided the landlord, upon learning of a suspension of the traffic by the tenant, exercises due diligence in resuming possession and continuing the right. In the case at bar the premises have not been devoted to any other use, and their only occupancy has been for continuing the traffic in liquors. The owners have done no act indicating an intention to abandon or suspend that business. On the contrary, it affirmatively appears that they have at all times intended to exercise the privilege, and they have used reasonable diligence in protecting their interests and preserving this right. I therefore vote for reversal.

SPRING, J. (dissenting). The salient facts in this proceeding are uncontroverted. John C. Hathaway owned the premises in question on March 23, 1896, when the liquor tax law became operative, and they then contained a saloon in which the traffic of liquor was carried on. On April 29, 1899, Mary A. Knights, who was then the occupant of this saloon, obtained a certificate from the county treasurer authorizing her to continue the traffic, which she did without interruption until January 27, 1900, when she voluntarily surrendered the certificate to obtain the rebate, as it was by its terms effective until the 1st of May following. Hathaway sold the premises to Slattery and Hammond by deed dated January 6, but delivered January 17, 1900. They expected undoubtedly to use them for a saloon for the sale of liquor. The purchasers informed Mrs. Knights of their purchase, and permitted her to continue her occupancy until March 1st, which she did. Her tenancy under Hathaway was by a verbal lease, and she paid rent monthly in advance, and for the month of February she attorned to the new owners. There was no agreement by which her certificate was to be assigned to them. From January 27th until March 1st during her occupancy of said premises, after the surrender of said certificate, the traffic in liquor was not carried on at all therein. On February 7, 1900, Slattery and Hammond applied to the county treasurer of said county for a certificate authorizing them to sell liquor in said premises. In their verified application filed for that purpose in response to the question, "Since what date have said premises been occupied continuously for such traffic in liquor?" they answered, "Since 1894 to January 29, 1900." The application was refused on the ground that said premises had not been "continuously occupied for such traffic" to the date of the application. On February 17th another application was presented by these owners, in which they answered

the same inquiry as to the continuous sale of liquor by saying, "Prior to May 23, 1896," eliminating the portion implying that the traffic in liquor had ceased January 29, 1900. Upon this application a certificate was issued to them permitting them to traffic in liquor in said premises until April 30th following. No consent of the owners of adjacent dwellings was filed with said treasurer accompanying said petition. The nearest entrance to said premises is "within two hundred feet, measured in a straight line, of the nearest entrance" to the buildings of the petitioners, each of which is "occupied exclusively for a dwelling." They commenced this proceeding to secure the revocation and cancellation of said certificate on the ground that said premises had not been occupied continuously for the traffic in liquor, and that the statement to the contrary in said application is false.

Subdivision 8 of section 17 of the liquor tax law (chapter 112, Laws 1896, and its various amendments) requires the consent in writing that the traffic in liquor be carried on in the premises executed by the owner or owners of at least two-thirds of the buildings exclusively occupied for dwellings and situated within 200 feet of said premises. If the liquor traffic was carried on in the premises March 23, 1896, such consent was unnecessary at that time, and shall not "be required so long as such premises shall be continuously occupied for such traffic." That is, although the occupant had a clear right to prosecute his business after March 23, 1896, and as long as he did so continuously, without obtaining the consent of these near-by owners, if he discontinued the traffic or abandoned the business, its resumption must be preceded by their consent executed and filed in compliance with the statute. People v. Hamilton, 25 App. Div. 428, 49 N. Y. Supp. 605; In re Klevesahl, 30 Misc. Rep. 361, 63 N. Y. Supp. 741; In re Bridge, 36 App. Div. 533, 55 N. Y. Supp. 54. The length of time of such abandonment is unimportant. People v. Lammerts, 18 Misc. Rep. 343, 40 N. Y. Supp. 1107, affirmed 14 App. Div. 628, 43 N. Y. Supp. 1161, without an opinion. The abandonment itself operates as a forfeiture. In re Lyman, 34 App. Div. 389, 54 N. Y. Supp. 294. In People v. Lammerts, 18 Misc. Rep. 343, 40 N. Y. Supp. 1107, the premises were occupied by a tenant engaged in the traffic in liquor when the liquor tax law went into effect. He ceased the traffic April 2d, but resumed it, continuing until June 11th, when he abandoned both the business and the premises. On the succeeding day Sweeney leased the premises of the owner for the purpose of conducting the liquor traffic, and at once began fitting it up with that view. On the 15th of that month the former tenant applied to the treasurer for permission to assign his certificate to Sweeney, which was refused, as the consent of the requisite number of owners within 200 feet had not been filed. On the 30th of June the occupant made application for a certificate, which was again refused, and proceedings were instituted to review the determination of the treasurer. That official was sustained at special term, the judge saying in his opinion, at page 348, 13 Misc. Rep., and at page 1111, 40 N. Y. Supp.:

"I am constrained to hold, therefore, that, as the business of trafficking in liquors was not continued after the 11th day of June, there was an abandonment of the premises for that purpose, and before the liquor business can

again be carried on in these premises the party applying for a tax certificate must comply with the provisions of the act by procuring the consent of two-thirds of the owners of buildings occupied exclusively for dwellings, as provided by subdivision 8 of section 17."

In the present case Mrs. Knights was the only person authorized to carry on this traffic January 27, 1900. She was in possession of the premises. The rent had been paid in advance, and certainly her tenancy could not be terminated until the 1st of the following month, if even then. She owned the certificate, and that furnished the only permission to traffic in liquors. It was her property, and it had a money value, and she surrendered it to obtain the rebate. No other certificate was issued until February 17th, and certainly during that interim no one could lawfully carry on the traffic in the premises. There is no claim any liquor was sold from the abandonment until the termination of her tenancy on the 1st of March following. There were, therefore, both the legal disqualification arising from the lack of the certificate and the actual abandonment of the traffic. During that period no one else was in possession, and, as long as she was the occupant and the holder of the certificate, if she abandoned the traffic, that suspended the business, so that its resumption must be based upon the written consent required by the liquor tax law. There is no pretense that Mrs. Knights ever agreed to transfer the certificate to these owners. It was personal property, and assignable (Niles v. Nathusa, 162 N. Y. 546, 57 N. E. 184), and they could have protected themselves by an agreement with her to transfer it to them by complying with section 27 of the liquor tax law. In re Kessler, decided by the court of appeals June 5th of the present year, 57 N. E. 402, is in harmony with this position, instead of adverse to it. In that case Cashin was in the occupancy of premises which had been continuously used for the traffic in liquor since the adoption of the liquor tax law. On the 19th of February, 1899, a part of the saloon was destroyed by fire, resulting in a forced suspension of the business. There was no surrender of the certificate, and repairs were commenced immediately, but were not completed for three months. During that time the traffic could not be carried on. As is said by Judge O'Brien, of the court of appeals, in his opinion:

"The suspension was due entirely to the fact that the place had been wholly or partially destroyed, since there was no intention to abandon the business, but, on the contrary, to resume it as soon as the building was in proper condition for that purpose; and it was actually resumed by Cashin, under the certificate in question, as soon as the place was put in a suitable condition for business. * * * In order to deprive the place of the privilege conferred by the statute, it must appear that there was a real and substantial abandonment of the business by the occupant."

In that case there was no voluntary abandonment by the occupant and no intention to suspend his business. In the present case the only person who had any title to the certificate, and who was the sole and lawful occupant of the premises, exercised her legal privilege in surrendering her certificate, and abandoning the business. The statute is very plain that, if the new occupants desired to revive the business after this voluntary discontinuance of it, they must procure the consent required by the statute. The first certificate had spent its force

by action of its owner. Their right to engage in the traffic of liquor depended upon a new certificate, and no liquor was sold in the meantime. Had Mrs. Knights actually agreed to continue the traffic in liquor until March 1st, and then assign the certificate to these owners, they would have been, in a measure, at her mercy. If the certificate had been canceled for her misconduct while held by her as their tenant, that would have operated to discontinue the traffic. Though the lessors were ignorant of her violation, the effect of a decision annulling the certificate therefor would reach them, requiring them, when they obtained a new certificate, to file the consent pursuant to the statute. As is said in Re Michell, 41 App. Div. 271, 273, 58 N. Y. Supp. 634, in commenting upon a similar provision: "He had placed it in the power of the assignee of the certificate to take it away, and, if the assignee exercised that power, he must bear the consequences." The import of the prevailing opinion is that a secret agreement between the landlord and his tenant, whereby the tenant agrees to continue the traffic of liquor, inures to the benefit of the former, so that he is relieved from filing the consent of adjacent owners of dwellings with his new application, even though the occupant has absolutely ceased the traffic, and surrendered the certificate issued to him. That is, a tenant who occupies a saloon under a tenancy of five years must surrender his certificate and discontinue the traffic in liquors, and does not engage in it for the balance of his term; but because, forsooth, he has violated his private agreement with his landlord, the public and adjacent owners must suffer for the breach, and not the lessor. In the meantime new dwellings may have been erected within the prohibited district by owners unaware of this private agreement, and upon the supposition that the consent of two-thirds of the owners must be obtained before liquor can be sold in the premises; and yet all to no purpose, for the tenant has discontinued the traffic in violation of his verbal contract with his lessor. I find no warrant in this law for that construction which gives this extraordinary relief to the owner from the burden cast upon him by the statute because he may have been deceived by his tenant.

An analysis of the facts in this proceeding shows that these owners did not place the slightest reliance upon Mrs. Knight's certificate, or her continuance of the liquor business. They acquired title to the premises January 17th, without making any arrangement with her to surrender possession, or to carry on the traffic. They claim that five days after their purchase they advised her of their ownership, and that she desired to continue in possession until March 1st, and that they complied with her request. She did not agree to retain her title, nor did she in terms agree to carry on the liquor traffic. She surrendered her certificate for cancellation January 27th, before the owners could have obtained possession, for her tenancy under Hathaway was in full life. On February 7th the purchasers applied for a liquor tax certificate. That was an entirely independent application, in no way recognizing any right in Mrs. Knights existing at that time. They stated in their petition that the occupation of said premises for traffic in liquor had terminated January 29th. They also stated that

consents of dwelling owners were unnecessary, because they had been filed upon Mrs. Knights' application in May, 1899. They were proceeding upon the assumption that these consents ran along indefinitely. This is further evidenced by the affidavit of Slattery, which states that these consents "were all perpetual in character." They were not paying any attention to the occupancy of Mrs. Knights, or the continuance of the traffic by her, but were acting upon the belief they could rest upon the consents filed with her petition. Again, they sought that their privilege to sell be of the date of February 1st. If they could depend upon Mrs. Knights' possession, their certificate need not be operative until March 1st. They did not seek even to have it commence from the date of the surrender of her certificate, though the fact of surrender and its date were known to them. While I find no authority in the statute for postdating a certificate, yet, to be consistent, and make an apparent continuous traffic, we would expect the period of surrender of one certificate and the rights under the new to be simultaneous if these owners were placing any reliance upon her certificate. She not only surrendered her certificate, but discontinued the traffic, and as Underhill, her saloon keeper, says, "on January 29, 1900, removed all her unsold stock of liquors and cigars therefrom, and permanently closed up said premises and business," and that said premises, "or any part thereof," were not occupied "for traffic in liquor, or for any other business enterprise," and that said saloon "has been closed ever since January 27, 1900"; and these facts are corroborated by the petition of the relators. The discontinuance of the traffic on January 27th was found as a fact by the judge at special term, and is recited in the order revoking the certificate issued to the defendants. I find nothing in the papers to support the charge either that the surrender of the certificate or that the discontinuance of the traffic was done secretly, although of no importance.

In brief, the case presents this condition of affairs: Mrs. Knights, on January 27th, was the sole owner of this certificate. No one else had any interest in it whatever. She was in possession, not under the defendants, but by virtue of her tenancy from Hathaway. On that day she voluntarily surrendered the certificate to obtain the rebate to which she alone was entitled, and which she later received. She continued in the occupancy of the premises until March 1st, but during that entire period no liquor was sold in the premises, and no one had any right to engage in that traffic therein. The defendants, under their new light, claim there was no discontinuance, because they understood she was to continue selling liquor. If the effect of the surrender of the certificate and the actual discontinuance of the traffic are to be dependent upon a secret agreement between the occupant and her landlord, then the execution of the law is precarious and uncertain, and it is materially shorn of its efficiency. The certificate is what the statute deals with, not the verbal understanding of the parties. The construction given in the prevailing opinions ignores the occupant and his certificate, and makes the intention of the owner, who has no right in the certificate, the determining factor.

It is contended that some liquor and the fixtures were in the saloon

when the owners went into possession. That fact does not constitute a continuance of the business. In re Lyman, 34 App. Div. 389, 54 N. Y. Supp. 294.

The order should be affirmed, with costs and disbursements to the respondents.

WILLIAMS, J., concurs.